**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

SORON WILLIAMS,

        Plaintiff,

vs.                                                   Case No. 3:07-cv-782-J-32JRK

EDDIE ACCARDI MOTOR COMPANY,
a Florida Corporation,

        Defendant.
_____/

## **REPORT AND RECOMMENDATION**[1]

This cause is before the Court on Defendant Eddie Accardi Motor Company's ("Defendant('s)") Motion to Stay District Court Proceedings and Compel Arbitration, filed October 24, 2007 (Doc. No. 11; "Motion"). Plaintiff Soron Williams ("Plaintiff") filed a Memorandum in Opposition to Defendant's Motion on October 30, 2007 (Doc. No. 12; "Opposition"). The Court permitted both parties to reply to the Opposition by Order dated November 5, 2007 (Doc. No. 14; "Order") and the parties did so. Defendant filed a Reply to Plaintiff's Opposition on November 20, 2007 (Doc. No. 16; "Reply"), and Plaintiff filed a Sur-reply (Doc. No. 17; "Sur-Reply") on December 6, 2007. Defendant's Motion was

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual allegations on appeal.

referred to the undersigned for a report and recommendation regarding an appropriate resolution of the Motion by Order dated November 15, 2007 (Doc. No. 15).

**I. Background**

Plaintiff began his employment with Defendant as a porter at Defendant's automobile dealership on or about July 13, 2005, at which time Plaintiff and a representative for Defendant signed a binding Dispute Resolution Agreement ("Agreement"). Motion ¶¶ 1-2; Compl. ¶ 12. In relevant part, the Agreement provides:

> This Agreement . . . is intended to provide the exclusive means of resolving all Disputes . . . which may arise between [the parties]. In consideration for their mutual promises, both parties, by entering into this Agreement, give up their right to trial by court or by jury. This Agreement is not a contract of employment but arises out of the Individual's employment or prospective employment by the Companies which are involved in Interstate Commerce. This Agreement is to be enforced under the Federal Arbitration Act ("FAA"). In the event that it is determined that the FAA does not apply, then this Agreement shall be enforced under the Florida Arbitration Code.

Motion at Exhibit A (Agreement unnumbered ¶ 3). Under the heading, "Disputes Subject to Arbitration," the Agreement provides:

> Disputes subject to arbitration are all Disputes between the parties which may otherwise be brought in a court or before a governmental agency, whether or not arising out of or related to the individual's application for employment . . . and whether or not arising before, during or after any employment relationship of the parties. . . .
>
> Such disputes include, but are not limited to . . . wrongful termination, . . . [and] any other tort, contract, equitable, statutory, or constitutional claim[.]

Motion at Exhibit A (Agreement unnumbered ¶¶ 4-5). Additionally, the Agreement incorporates by reference a document setting forth the rules to govern the arbitration and the procedure for requesting arbitration ("Agreement for Binding Arbitration"). Motion at Exhibit A (Agreement for Binding Arbitration unnumbered ¶ 2).

At an unknown time during Plaintiff's employment, Plaintiff notified Defendant that he had a severe hand burn which would preclude Plaintiff from working until the burn properly healed, and provided Defendant with medical documentation to this effect. Compl. ¶¶ 13-14.  Plaintiff apparently commenced leave under the Family Medical Leave Act ("FMLA"), and upon his return to work in May of 2007, Plaintiff's employment was terminated.[2]  Compl. ¶¶ 15, 25; Opposition at Exhibit A (Aff. of Soron Williams ¶ 2 ). Notwithstanding signing the Agreement, Plaintiff filed the instant Complaint and Demand for Jury Trial on August 23, 2007, alleging that Defendant interfered with Plaintiff's rights under the FMLA by refusing to allow Plaintiff to return to the same position he held when his leave under the FMLA commenced.  Compl. ¶¶ 20-21.  Additionally, Plaintiff claims that Defendant retaliated against him for exercising his substantive rights under the FMLA by terminating Plaintiff upon his return to work.  Compl. ¶¶ 24-26.

### A. Defendant's Motion

Defendant seeks an Order staying District Court proceedings and compelling arbitration pursuant to the Agreement and sections 3 and 4 of the Federal Arbitration Act ("FAA"). See Motion at 11; 9 U.S.C. §§ 3-4.  Defendant asserts that the Agreement is enforceable under the FAA (Motion at 5-8), Plaintiff's claims are covered by the Agreement and present arbitrable issues (Motion at 8-10), and Defendant has not waived its right to compel arbitration (Motion at 10-11).  Defendant also points out the Agreement's severability provision, which provides that if any provision of the Agreement is found to be

---

[2] There is nothing in the parties' filings to indicate when the hand burn actually occurred.

invalid or unenforceable, the remainder of the agreement should be enforced. Motion at 7-8; Motion at Exhibit A (Agreement unnumbered ¶ 10).

### B. Plaintiff's Opposition

Plaintiff responds to Defendant's Motion by asserting that Defendant cannot establish a "transaction"[3] that substantially affects interstate commerce as required by the FAA because Plaintiff performed a job that had no direct effect on interstate commerce. See 9 U.S.C. § 2; Opposition at 2-4.  Alternatively, Plaintiff contends that even if the interstate commerce issue were eliminated, arbitration does not provide an effective alternative forum for Plaintiff to vindicate his FMLA claim.  Opposition at 5-8.  To support this argument, Plaintiff asserts that while the FMLA provides for damages to include "a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action," 29 U.S.C. § 2617(a)(3), the terms of the Agreement impermissibly limit Plaintiff's remedy for attorney's fees by allowing the arbitrator to consider attorney's fees only if authorized by law and stipulated by the parties.  Opposition at 5.  Plaintiff also contends that although Defendant has stipulated to pay the entire cost of arbitration (Opposition at 7; Motion at 6), arbitration is an impermissible forum because the FMLA's provision for "other costs of the action" is broader than Defendant's stipulation.  Opposition at 7.  Finally, Plaintiff claims that the severability provision is ineffective.  Opposition at 8.  In support of this claim, Plaintiff states that the presence of an invalid provision regarding fees and costs

---

[3] The FAA requires "a transaction involving commerce . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a . . . transaction[.]"  9 U.S.C. § 2.  Plaintiff appears to refer to his underlying employment duties as the "transaction(s)" at issue.  At all times used by the Court in this Report and Recommendation, "transaction" refers to the employment relationship between the employee (Plaintiff) and employer (Defendant).

taints the entire Agreement, thus making judicial reformation inappropriate. Opposition at 8.

### C. Defendant's Reply

In its Reply, Defendant asserts that the Agreement is covered by the FAA because it concerns a transaction involving interstate commerce. Reply at 2. Defendant counters Plaintiff's Opposition by way of an affidavit of Defendant's general manager explaining how Defendant's day-to-day functions as a car dealership have the requisite effect on interstate commerce. Reply at 2-5, Exhibit A (Aff. of Al Alvarado). Alternatively, Defendant asserts that if the FAA does not apply to the transaction, the Agreement provides that Plaintiff still must arbitrate pursuant to the Florida Arbitration Code ("FAC"). Reply at 5-7.

### D. Plaintiff's Sur-Reply

In his Sur-Reply, Plaintiff claims that Defendant has waived its opportunity to show the effect of the business on interstate commerce because the assertion was not made in Defendant's original Motion. Sur-Reply at 2. Next, Plaintiff contends that even if Defendant's interstate commerce argument is properly before the Court, Defendant still has not established[4] that the transaction in dispute involved interstate commerce; thus, the FAA should not apply. Sur-Reply at 2-3. Finally, Plaintiff argues that the FAC should not apply because Defendant in its initial Motion attempted to invoke arbitration pursuant to

---

[4] Plaintiff actually states that Defendant has "failed to meet its burden" of proving that interstate commerce is involved. Sur-Reply at 2-3. However, Plaintiff does not contest the factual allegations in Defendant's affidavit, nor is Plaintiff contesting that the car dealership itself is involved in interstate commerce. Rather, Plaintiff argues that Defendant has failed to show that Plaintiff had any direct involvement in interstate commerce as a porter in Defendant's Florida automobile dealership. See id.

the FAA but failed to assert that the FAC should apply if the FAA does not. Sur-Reply at 3-4.

## II. Legal Framework

The FAA was enacted in 1925 to reverse the longstanding judicial hostility towards arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-27 (1985). Section 3 of the FAA requires a court to stay a proceeding where the issue in the proceeding "is referable to arbitration under an agreement in writing for such arbitration."[5] 9 U.S.C § 3. Additionally, section 4 provides for a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition a district court for an order directing that the arbitration proceed.[6] 9 U.S.C. § 4. On its face, section 3 appears to provide for a stay of ongoing proceedings in the district court if such proceedings are referable to arbitration, but does not explicitly

---

[5] Section 3 provides in full as follows:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default with such arbitration.

9 U.S.C. § 3.

[6] Section 4 provides, in relevant part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of the suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement . . . .

9 U.S.C. § 4.

provide the court with authority to compel arbitration. Section 4 appears to contemplate a separate action being filed by the party seeking to arbitrate, providing for specific performance of an agreement to arbitrate when the opposing party refuses. However, section 6 provides that a request for relief under either section 3 or 4 is to be treated procedurally as a motion.[7] Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23 n.27 (1983). As such, courts have read sections 3 and 4 together to allow a motion to be filed in an existing case that not only stays district court proceedings, but also compels arbitration in accordance with an arbitration agreement. See, e.g., E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002) (stating "the FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement," and citing sections 3 and 4); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (stating the FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed," and citing sections 3 and 4) (emphasis in original); Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368-69 (11th Cir. 2005) (analyzing the sections together to determine that the district court has authority to stay proceedings and compel arbitration); Houlihan v. Offerman & Co., 31 F.3d 692, 695 (8th Cir. 1994) (stating "[a] federal court must stay court proceedings and compel arbitration once it determines that

---

[7] Section 6 provides in full: "Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. § 6.

the dispute falls within the scope of a valid arbitration agreement," and citing sections 3 and 4).

When determining whether to stay litigation and compel arbitration, a court should consider only so-called "gateway" matters. Anders v. Hometown Mortg. Servs., Inc., 346 F.3d 1024, 1027 (11th Cir. 2003) (citing Green Tree Fin. Corp v. Bazzle, 539 U.S. 444, 452 (2003)) In other words, a court should decide "'such issues as are essential to defining the nature of the forum in which a dispute will be decided.'" Musnick v. King Motor Co. of Ft. Lauderdale, 325 F.3d 1255, 1261 (11th Cir. 2003) (quoting Great Western Mortg. Corp. v. Peacock, 110 F.3d 222, 230-31 (3d Cir. 1997)).  Specifically, the following factors should be considered: 1) whether a valid written agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitrate has been waived. Senti v. Sanger Works Factory, Inc., 2007 WL 1174076, at *2 (M.D. Fla. Apr. 18, 2007) (citing Fla. Farm Bureau Ins. Cos. v. Pulte Home Corp., 2005 WL 1345779, at *3 (M.D. Fla. June 6, 2005); Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999)).  As there is a strong federal policy favoring alternative means of dispute resolution, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]"  Moses H. Cone, 460 U.S. at 24-25.

**III. Discussion**

    **A. Whether There Is a Valid Written Agreement to Arbitrate**

To determine whether the parties have agreed to arbitrate a certain matter, courts apply generally accepted state-law principles governing the formation of contracts. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  As this contract was formed in

-8-

the state of Florida and the parties have stipulated that Florida law applies (Motion at Exhibit A (Agreement unnumbered ¶ 2)), the Court looks to Florida law to determine whether an enforceable agreement to arbitrate exists. See Senti, 2007 WL 1174076 at *5. In Florida, "[a] party has a duty to learn and know the contents of a proposed contract before he signs and delivers it and is presumed to know and understand its contents, terms and conditions." Patricoff v. Home Team Pest Defense, 2006 WL 890094, at *2 (M.D. Fla. Apr. 3, 2006) (quoting Sabin v. Lowe's of Fla., Inc., 404 So. 2d 772, 773 (Fla. 5th DCA 1981)).

The Agreement signed by both parties provides, "[t]his Agreement . . . arises out of the Individual's employment . . . by the Companies which are involved in Interstate Commerce." Motion at Exhibit A (Agreement unnumbered ¶ 3). Further, the Agreement states that it shall be enforced under the FAA. Id. Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a <u>transaction involving commerce</u> to settle by arbitration a controversy arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).[8]

Plaintiff asserts that the Agreement to arbitrate is invalid because Defendants have failed to show that the transaction at issue involves interstate commerce, as required by section 2 of the FAA. Opposition at 2. To support his position, Plaintiff cites Ex parte

---

[8] The FAA refers to interstate commerce in two contexts. Section 1 exempts from the FAA only transportation employees who are actually "engaged" in commerce. See 9 U.S.C. § 1; Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001). Section 2 requires the contract or transaction at issue to "involve" interstate commerce. See 9 U.S.C. § 2. Plaintiff here focuses his argument on section 2, claiming that the transaction (the employment relationship) does not involve interstate commerce as required by section 2.

Webb, 855 So. 2d 1031 (Ala. 2003).  In Webb, the Alabama Supreme Court held that an employee performing menial chores in a cleanup shop for a car dealership company in Alabama did not have an effect on interstate commerce because none of the employee's actions substantially affected any of the transactions between the car dealership company and persons or entities outside of Alabama.  Id. at 1037.  At first glance, Webb appears remarkably similar to the instant case.  However, as Defendant points out, Webb relies almost entirely on Alafabco, Inc v. Citizens Bank, 872 So. 2d 798 (Ala. 2002), which was subsequently reversed by the United States Supreme Court.  See 539 U.S. 52 (2003) (holding a sufficient nexus existed with interstate commerce to make an individual debt-restructuring agreement enforceable under the FAA).  As recognized by the United States Supreme Court in Citizens Bank, the lower court was misguided when it interpreted the reach of "involving commerce" in the FAA by narrowly focusing on whether specific transactions had an effect on commerce.  Citizens Bank, 539 U.S. at 56.  The United States Supreme Court stated:

> Congress' Commerce Clause Power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control.

Id.

As Webb appears to have applied an analysis that is substantially similar to the lower court's analysis in Citizens Bank, as opposed to looking to the aggregate of the economic activity in question, the Court does not rely on Webb.  See Webb, 855 So. 2d at 1037; Citizens Bank, 872 So. 2d at 803.  Rather, to determine whether an agreement to arbitrate claims arising out of the employment relationship is "a contract evidencing a

transaction involving commerce," 9 U.S.C. § 2, the Court must interpret the FAA's language broadly. Citizens Bank, 539 U.S. at 56 (citing Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273-74 (1995)).  The United States Supreme Court has instructed that courts should interpret the term "involving commerce" as "the functional equivalent of the more familiar term 'affecting commerce'–words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." Jenkins v. First Am. Cash Advance of Ga., LLC, 400 F.3d 868, 874 (11th Cir. 2005), cert. denied, 546 U.S. 1214 (2006) (citing Citizens Bank, 539 U.S. at 56). It follows from this broad interpretation that "the FAA encompasses a wider range of transactions than those actually 'in commerce'–that is, 'within the flow of interstate commerce[.]'" Id.  Clearly, the Commerce Clause gives Congress the power to regulate local business establishments that purchase substantial quantities of goods that have moved in interstate commerce.  Id. (citing Katzenbach v. McClung, 379 U.S. 294, 304-05 (1964)).

In light of the foregoing discussion, Plaintiff's focus on his individual employment duties not having a substantial effect on interstate commerce is misplaced.  Courts construing the language of section 2 in the context of an employment relationship have generally focused on the nature of the defendant employer's business, not the plaintiff employee's individual duties. See, e.g., Baer v. Terminix Int'l Co., 975 F. Supp. 1272, 1278 (D. Kan. 1997); Nicholson v. Labor Ready, Inc., 1997 WL 294393, at *3 (N.D. Cal. May 28, 1997).  As an automobile dealership, Defendant is surely "affecting" interstate

commerce.[9]  See Baer, 975 F. Supp. at 1278; Nicholson, 1997 WL 294393, at *3. Defendant commonly participates in trading automobiles with other out-of-state dealerships, and accepts trade-in vehicles that consumers purchased from out-of-state. Reply at Exhibit A (Aff. of Al Alvarado ¶ 4).  It follows that Defendant is subject to regulation by Congress (and the FAA) because it purchases substantial quantities of goods that have moved in interstate commerce. See Citizens Bank, 539 U.S. at 57 (citing Katzenbach, 379 U.S. at 304-05)). Moreover, Defendant's inventory is manufactured out-of-state, Defendant sells and leases cars to out-of-state customers, and Defendant offers financing through its business relationships with large, nationwide financial institutions. Reply at 3, Exhibit A (Aff. of Al Alvarado ¶¶ 5-6).

Even if the Court were to narrow the focus on whether Plaintiff's individual employment duties were within the flow of Defendant's overall effect on commerce, it appears that Plaintiff's support services directly contributed to Defendant's activities and operations, which in turn "affected" interstate commerce.[10]  Plaintiff was employed in a position that ensured the maintenance, storage, sale, and leasing of Defendant's inventory, made up of cars purchased from out-of-state and sold to out-of-state customers. Reply at 5.  As such, Plaintiff was also affecting interstate commerce because he was performing functions that were "within the flow of interstate commerce[.]"  See Allied-

---

[9] Indeed, Plaintiff and Defendant contemplated an interstate commerce connection by signing the Agreement that expressly stipulated to Defendant being involved in interstate commerce. See Motion at Exhibit A (Agreement unnumbered ¶ 3); Jenkins, 400 F.3d at 875 n.5. The Court recognizes, however, that parties cannot stipulate to being involved in interstate commerce if they are not truly involved.

[10] The Court's contemplation of a narrower focus is not to be confused with the Webb analysis, which viewed the plaintiff's employment duties in isolation. See Webb, 855 So. 2d at 1037. Rather, the Court is recognizing that Plaintiff's job duties appear to be within the flow of interstate commerce as opposed to Plaintiff merely "performing menial chores in a cleanup shop." See id.

Bruce, 513 U.S. at 273-74.  The transaction between the employer engaged in interstate commerce and its (former) employee is properly governed by the FAA.

Against the weight of authority, Plaintiff views the United States Court of Appeals for the Eleventh Circuit's opinion in Caley, 428 F.3d at 1370, as essentially limiting the Commerce Clause power as it relates to the employment relationship.  The Court held in Caley, "[b]ecause [the defendant]'s overall employment practices affect commerce, the Commerce Clause requirement is satisfied."  Id. (emphasis added).  Plaintiff argues that the Eleventh Circuit's use of the phrase "employment practices" affecting commerce cannot support the proposition that courts should focus on the broader impact of the defendant's business on commerce.  Sur-Reply at 3.  However, a close reading of Caley reveals that the Eleventh Circuit did not likely intend to interpret the limit of Congress' Commerce Clause power solely to situations in which the defendant's "overall employment practices" affect interstate commerce.  See Caley, 428 F.3d at 1370.  When the phrase is read in context, it appears that all of the language in the paragraph preceding the phrase "employment practices" evinces an intention to interpret the FAA's reach broadly, to include the employer's overall effect on commerce, rather than solely its "employment practices."[11]  See id.  Indeed, the Court held that the FAA applied because the underlying employment relationship in question affected interstate commerce.  See id.

---

[11] Assuming, arguendo, that the Eleventh Circuit did intend to strictly limit the reach of the Commerce Clause in the employer/employee relationship to situations in which "employment practices" affect commerce, Plaintiff's underlying claim is within the reach of Congress' regulation (the FMLA).  As such, Defendant's "employment practices" affect commerce by virtue of being subject to federal regulation.  See Caley, 428 F.3d at 1370.

Plaintiff next asserts that Defendant failed to allege involvement in interstate commerce in its initial Motion[12] and thus has waived the opportunity to demonstrate its involvement in interstate commerce.[13]  Sur-Reply at 2.  However, there is no legal requirement for Defendant to anticipate every possible argument that can be raised by Plaintiff when Plaintiff opposes arbitration.  Rather than Defendant being required to affirmatively plead that it is involved in interstate commerce in its initial Motion, Defendant's burden is to establish there is a valid written agreement to arbitrate, arbitrable issues exist, and no waiver of arbitration has occurred.  Senti, 2007 WL 1174076 at *2.  Furthermore, there was no bar to responding when Plaintiff raised the issue of interstate commerce in opposing referral to arbitration.  Indeed, Defendant was permitted to reply to Plaintiff's Opposition and fully addressed this issue.  See Reply at 2-5.

There is a valid, written agreement to arbitrate in this case which is properly governed by the FAA.  Having decided that the FAA is properly invoked, there is no need to discuss the applicability of the FAC.  Thus, the Court turns to whether the alleged violations of the FMLA are arbitrable.

---

[12]  Notably, Plaintiff's Complaint alleges that Defendant is an "employer" as defined by the FMLA. Compl. ¶ 6.  The FMLA defines "employer" as "any person engaged in commerce or in any industry or activity affecting commerce[.]" 29 U.S.C. § 2611(4)(A)(I).  By alleging that Defendant is an employer as defined by the FMLA, Plaintiff himself appears to recognize that Defendant is engaged in commerce.

[13]  Plaintiff cites U.S. v. Harding, 172 Fed. Appx. 910, 914 n.2 (11th Cir. 2006) in support of his waiver argument.  Harding was referring to arguments raised for the first time in a reply brief at the appellate level.  See id.  Here, Defendant merely responded when Plaintiff asserted lack of involvement with interstate commerce as a defense to arbitration under the FAA.

### B. Whether Arbitrable Issues Exist

Plaintiff's next argument centers around whether his FMLA claims are arbitrable when the FMLA provides for certain remedies but the Agreement attempts to limit those remedies. While the FMLA provides for damages to include "a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action," 29 U.S.C. § 2617(a)(3), Plaintiff asserts that the terms of the Agreement impermissibly limit Plaintiff's remedy for attorney's fees and costs by allowing the arbitrator to consider attorney's fees only if authorized by law and stipulated by the parties. Opposition at 5. Plaintiff also contends that although Defendant has stipulated to pay the entire cost of arbitration (Opposition at 7; Motion at 6), arbitration is an impermissible forum because the FMLA's provision for "other costs of the action" is broader than Defendant's stipulation. Opposition at 7.

#### i. Arbitrability of FMLA claims

It is well settled that statutory claims may be the subject of an arbitration agreement. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991). By agreeing to arbitrate a statutory claim, a party is still entitled to the substantive rights afforded by the statute; the party merely submits to resolution in a non-judicial forum. Mitsubishi, 473 U.S. at 628. The party "trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." Id. Indeed, courts have held that contractual agreements to arbitrate FMLA claims are enforceable. See, e.g., O'Neil v. Hilton Head Hosp., 115 F.3d 272, 274 (4th Cir. 1997); Jones v. Fujitsu Network Comms. Inc., 81 F. Supp. 2d 688, 690 (N.D. Tex. 1999).

To support his position that his FMLA is not arbitrable, Plaintiff argues that even if he were able to afford the cost of arbitration,[14] he would not be able to obtain his full remedies as authorized by the FMLA.  Opposition at 7.  The Agreement for Binding Arbitration provides, "[t]axing of costs or awarding of attorney's fees will be considered, if authorized by law and stipulated by the parties."  Motion at Exhibit A (Agreement for Binding Arbitration unnumbered ¶ 4).  Defendant has offered to stipulate to more specific language to make clear that "[t]he arbitrator will determine the taxing of costs or awarding of attorney's fees as authorized by applicable law."  Motion at 7; Exhibit B (Attachment to Email ¶ 4 ).  In light of Defendant's offer to stipulate to this language, it appears that the Agreement does not restrict Plaintiff's remedial rights so long as the arbitrator follows the applicable law in this case: the FMLA.

### ii. Severability of the Remedial Provision

Assuming, arguendo, that the remedial provision does restrict Plaintiff's statutory remedial rights notwithstanding Defendant's offer to stipulate to more specific language regarding costs, the Agreement includes a severability provision, providing that "[i]f any provision of th[e] Agreement . . . is found by a court to be invalid or otherwise unenforceable, the court shall enforce the remainder of th[e] Agreement and the Arbitration Rules."  Motion at Exhibit A (Agreement unnumbered ¶ 10). Generally, severability is a matter of state contract law.  Anders, 346 F.3d at 1032 (citing Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054, 1061 (11th Cir. 1998)).  In Florida,

---

[14] Notwithstanding Plaintiff's argument, Defendant has stipulated that it will bear the costs of arbitration.  See Motion at 6, Exhibit B.

"contractual provisions are severable, where the illegal portion of the contract does not go to its essence, and, with the illegal portion eliminated, there remain valid legal obligations." Fonte v. AT&T Wireless Servs., Inc., 903 So. 2d 1019, 1024 (Fla. 4th DCA 2005) (holding a provision prohibiting attorney's fees can be severed when a statute's remedial purpose would be undermined without an award of attorney's fees). If the claims under a statute are, indeed, arbitrable and there is a valid severability provision in the arbitration agreement, then the arbitrator (not the court) must decide the validity of the remedial restriction provisions and whether they should be severed from the agreement. Anders, 346 F.3d at 1032-33.

In Anders, the Eleventh Circuit had occasion to decide whether a restrictive remedial provision in an arbitration contract mandated arbitration even if the remedial clause did not allow the full range of statutory remedies. Id. In holding that arbitration was mandated despite a provision limiting remedies normally afforded by the statute, the Court relied on the severability provision in the parties' contract. Id. at 1032. The provision specified that if a court were to declare part of the agreement invalid or unenforceable, the remainder of the agreement would remain unaffected. Id. at 1027. The Court held that the severability provision rendered the agreement arbitrable, but the decision of whether to sever the restrictive remedial provision was for the arbitrator, as that decision was not a "gateway" issue for courts to decide. Id. at 1032-33.

Plaintiff urges the Court to follow Paladino, in which the Eleventh Circuit held that an arbitration agreement purporting to cover statutory claims was unenforceable because it was "fundamentally at odds with the purposes of [the statutory claim at issue]."

Paladino, 134 F.3d at 1060; Opposition at 5. However, as noted by the later Eleventh Circuit decision in Anders, the agreement in Paladino did not include a severability provision. Anders, 346 F.3d at 1031. The Anders Court stated, "[a severability provision] evinces the parties' intention to enforce the remainder of the agreement in the event any portion of it is deemed invalid." Id. As the Anders Court declined to follow Paladino in light of the severability distinction, this Court declines to follow Paladino as well. See id.

Because the remedial provision does not go to the essence of the contract to arbitrate and each side would continue to have valid legal obligations without the provision in place, it is severable from the rest of the Agreement. See Fonte, 903 So. 2d at 1024. The parties' severability provision is similar to the provision in Anders: it states, "if any provision . . . is found by a court to be invalid or otherwise unenforceable, the court shall enforce the remainder of th[e] Agreement[.]" Motion at Exhibit A (Agreement unnumbered ¶ 10); see Anders, 346. F.3d at 1027. As such, the severability provision in this case, like in Anders, renders the Agreement arbitrable. See Anders, 346 F.3d at 1032. However, the Court will not decide whether the remedial provision should be severed, as the Eleventh Circuit has declared this issue is properly decided by the arbitrator. See id. at 1033.

### C. Whether the Right to Arbitrate was Waived by Defendant

Finally, the Court must determine whether Defendant has waived its right to arbitrate. To determine whether the right to arbitrate has been waived, courts apply a two part test: 1) whether, "'under the totality of the circumstances,'" a party "'has acted inconsistently with the arbitration right'"; and 2) if, by doing so, that party "'has in some way

prejudiced the other party.'" Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1315-16 (11th Cir. 2002) (quoting S& H Contractors, Inc., v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990)).  Plaintiff does not contend that Defendant has waived its right to arbitrate in this case, nor does the record indicate that waiver of arbitration is at issue.[15] Accordingly, Defendant has not waived its right to arbitrate.

### III. Conclusion

The Court finds that a valid written agreement to arbitrate exists, the alleged violations of the FMLA are arbitrable, and Defendant has not waived its right to arbitrate. For the foregoing reasons, it is **RECOMMENDED**:

1. Defendant's Motion to Stay District Court Proceedings and Compel Arbitration be **GRANTED** pursuant to 9 U.S.C. § 3-4.[16]

---

[15] To the contrary, Defendant has consistently referred to the existence of an arbitration agreement in each of its pleadings. Motion at 10. Defendant also sought Plaintiff's consent to arbitration without the Court's intervention. Id.

[16] While section 3 of the FAA provides for a stay of litigation when the claims are properly referable to arbitration, it does not provide for dismissal of a case. Senti, 2007 WL 1174076, at *9. The FAA does not oust the district court's jurisdiction, but rather contemplates continuing supervision by the district court to ensure that arbitration proceedings are conducted within a reasonable period of time. Id. (citing Anaconda v. Am. Sugar Refining Co., 322 U.S. 42, 44 (1944); Meyer v. Dans un Jardin, S.A., 816 F.2d 533, 538-39 (10th Cir. 1987)). However, a court may dismiss the action where it is clear that, because all issues are arbitrable, there are no live issues before the court. See, e.g., Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992); Olsher Metals Corp. v. Olsher, 2003 WL 25600635, at *9 (S.D. Fla. Mar. 26, 2003). Given the relief sought by Defendant in this case, this Court recommends a stay of proceedings, rather than a dismissal.

    2.  Should Defendant's Motion be granted, it is further **RECOMMENDED** that the Court retain jurisdiction over the case and order the parties to file periodic reports on the status of arbitration.

    **RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on January 28, 2008.

*/s/ James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

kas

Copies to:
The Honorable Timothy J. Corrigan
Counsel of Record